THOMAS H. WALLING, PLAINTIFF IN ERROR, v. CENTRAL RAILROAD COMPANY OF NEW JERSEY ET AL., DEFENDANTS IN ERROR.

Submitted July 10, 1911—Decided November 20, 1911.

It appeared in this case that by reason of trees and shrubbery growing along the line of the defendant's railroad, the plaintiff, who was driving a horse and wagon along the road toward the railroad crossing, had his view obstructed for a long distance which prevented him from seeing the approach of a locomotive engine to the railroad crossing until he attained a point in the road within twenty feet of the crossing; and it was then for the first time that he was enabled to see a locomotive engine approaching the crossing rapidly, within one hundred and twenty feet of it; neither of the statutory signals had been previously given, to give warning of its approach to the crossing, and none was given until the engine was close to the crossing when it emitted a loud blast from its whistle, which frightened the horse and caused him to become unmanageable and to run into the locomotive engine, whereby the plaintiff was injured. *Held*, that the proximate cause of the injury was the original wrong of the

defendant in failing to give either of the statutory signals in time to warn the plaintiff from entering into a place of danger, and that it was immaterial that the immediate cause of frightening the horse and causing him to run into the locomotive engine, was the lawful blowing of the whistle for the next crossing, the injury to the plaintiff being attributable to the original unlawful act of the defendant.

On error to the Supreme Court.

For the plaintiff in error, *Aaron E. Johnston.*

For the defendants in error, *George Holmes, William A. Barkalow* and *Durand, Ivins & Carton.*

The opinion of the court was delivered by

KALISCH, J. The writ of error in this case brings under review the propriety of a nonsuit ordered in a Supreme Court issue tried in the Monmouth Circuit. This was a second trial of the cause. At a former trial, upon the same evidence as presented by the plaintiff at the second trial, the case was submitted to the jury and a verdict returned in favor of the plaintiff. This verdict, upon the defendant's rule to show cause, was subsequently set aside by the Supreme Court, at the June term, 1909. Prior to the second trial, the plaintiff's declaration was amended, to contain an averment that the defendant company, by its servants, negligently failed to give the statutory signals and because of such failure, &c., the plaintiff, who was driving a horse and wagon and approaching the railroad crossing where the collision took place, and whose view of the approaching train was obstructed, and who had no notice of the approach of the train to the crossing, drove the horse and wagon close to said crossing in a place or zone of danger, from which he was unable to extricate himself, and while said horse was in said position of danger, the defendant, by its servants, carelessly, &c., blew the whistle of said engine close to the said horse and to said crossing, thereby frightening said horse so that he became unmanageable, and the plaintiff could not hold or control him, and said horse plunged

forward and into said locomotive engine, whereby the plaintiff was injured, &c.

The testimony adduced by the plaintiff tended to establish these facts, as alleged in the declaration, and it also appeared thereby that the plaintiff for a long distance on the road had his view shut off by trees and shrubbery in the direction from which the locomotive engine and train were approaching the crossing, and that the first opportunity of any view at all afforded to the plaintiff was when he was within twenty feet of the railroad crossing and in a place of danger, and that then it was that he was first enabled to see the locomotive engine approaching, and that at that time the engine was about one hundred and twenty feet away from the crossing. The plaintiff's testimony tended also to establish that he had cautiously proceeded along the road and had been looking and listening for signals, and that he had neither seen nor heard any, until he reached within twenty feet of the crossing, when the presence of the locomotive engine and train first became visible to him.

In granting the nonsuit the trial judge said: "There was, however, no proof that the blowing of the whistle was negligence. The statute requires it to be blown or a bell rung when a train approaches a crossing and arrives at a certain distance from it. It was not shown that when the train was at this crossing another was not so near as to require the statutory signal to be given.

"It was *per se* carelessness to blow the whistle unless the plaintiff was in such a position as to charge the engineer with knowledge of his presence. Malice or wantonness attributable to the defendants is not shown."

This was the exact language used by the Supreme Court in setting aside the verdict obtained in the first trial. This was an erroneous view of the law as applied to the facts of the plaintiff's case.

The jury might have reasonably found that the failure on the part of the defendant to give either of the statutory signals to warn travelers of the approach of the train to the

crossing where the collision occurred was the negligence on which the action was based.

And the jury might also have properly found that the blowing of the whistle near or at the crossing (whether negligent or not) where the collision took place, was a mere contributory cause. And the jury might also have reasonably found that if the whistle had been blown nine hundred feet from the crossing, as required by law, and the whistle blown or the bell sounded continuously thereafter, it would have been a warning to the plaintiff that would have enabled him to avoid driving too close to the crossing and into a place of danger. But, under the circumstances, as developed here, the failure to give either of the statutory signals lulled the plaintiff into a sense of security and lured him into a place of danger where he would not have been if he had had timely warning. The plaintiff, occupying a place of danger when the locomotive engine reached near the crossing and gave the blasts of the whistle which frightened the horse, was due to the failure of the defendant to give either of the statutory signals in time.

The defendant attempts to excuse the original wrongful act by the plea that the statute imposed a duty upon the engineer either to blow a whistle or ring a bell nine hundred feet from a crossing and to continue to give either of those statutory signals until the crossing has been passed, and that, therefore, when the whistle was blown near the crossing which startled the horse and caused the collision, the engineer was in the performance of a statutory duty to give a signal for the next crossing, and that unless there was proof tending to show that this duty was negligently performed, the plaintiff's case must fail.

But, this position assumed by the defendant, in view of the circumstances of this case, is manifestly unsound. To give to the defendant's contention the effect asked for would be to release a wrong-doer from the consequences of his own wrong. It is wholly immaterial that the act or acts intervening between the original wrongful act and the act which injured the plaintiff was or were lawful, because it was the force of the defendant's original wrong which placed the plaintiff in a

position of peril. And the force of the defendant's original wrongful act continued so long as the plaintiff occupied a position of danger induced by such wrongful act. It is the negligent act in its causal relation to the consequent injury that determines the proximate cause. The principle here stated is well illustrated by the famous squib case—*Scott* v. *Shepard,* 2 *Bl. R.* 892. Although it appeared in that case that after the original wrong-doer had thrown the squib, the lawful acts of two individuals had intervened before the plaintiff was struck by the squib, and that it was the lawful act of the last thrower of the squib, which injured the plaintiff, Chief Justice DeGrey held that the force of the original act of the wrong-doer having resulted in an injury to the plaintiff, he must be held responsible for the consequences which ensued.

As the plaintiff's testimony in this case tended to prove that the defendant had failed to give either of the statutory signals, and that the plaintiff had no notice of the approach of the locomotive engine and train until he was within twenty feet of the railroad crossing and in a place of peril, when the horse became frightened and unmanageable, by the blasts from the whistle of the engine, and plunged into it, injuring the plaintiff, there was a case established for a jury to pass upon, and the action of the trial court in nonsuiting the plaintiff was error, requiring a reversal of the judgment.

The judgment of the Supreme Court will therefore be reversed and a *venire de novo* awarded.

*For affirmance*—THE CHIEF JUSTICE, SWAYZE, VOORHEES, JJ. 3.

*For reversal*—THE CHANCELLOR, GARRISON, TRENCHARD, PARKER, BERGEN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, JJ. 10.